WILHELMINA MEYER, Respondent, v. VIRGINIUS J. MAYO
and LOIS D. W. MAYO, Otherwise Known as LOIS DUDLEY
WATERBURY, Appellants, Impleaded with FIDELITY AND
DEPOSIT COMPANY OF MARYLAND and Others, Defendants.

                  Second Department, March 4, 1921.

Fraudulent conveyances — evidence to sustain finding must be
    competent against both grantor and grantee — admissions —
    competency of record of testimony given by grantor in action
    resulting in judgment against him — statements of grantor of
    intention to defraud — effect of lapse of time between statements
    and conveyance — disparity between actual value of property and
    recited nominal value as affecting charge of fraud — effect of
    failure of defendant to testify — acts constituting purpose to
    defraud.

A finding that a conveyance was made to hinder, delay and defraud creditors
    must be sustained by evidence that is competent against both grantor
    and grantee.
In a suit to set aside an alleged fraudulent conveyance, the record of the
    testimony given by the defendant grantor upon the trial of the action
    resulting in the judgment against him forming the basis of this suit is
    competent as against said grantor, but is hearsay as against the grantee.
In such a suit declarations of the defendant grantor are admissible in evidence
    for the mere technical reason that they are admissions of a party to the
    action; but when passing upon the crucial question of fraud such evidence
    may not be considered, for a finding of fraud affects the title of the
    grantee and the evidence which induces such finding must be competent
    also against him.
Where a judgment had been rendered in plaintiff's favor against a man
    who had led her into a ceremonial marriage while he had a wife living,
    statements made by him to her, in terms: " Oh you expect to get
    something out of me in this action that you have brought against me,
    but I want to tell you now that I have — I will fix everything so you will
    never get one cent, and I have the screws down good and tight," are
    not hearsay, but a manifestation of his mental attitude toward the
    plaintiff, and are evidence competent not only against him but against
    his grantee in a suit to set aside a fraudulent conveyance.
In such case, where the legal title to the property in question was not in
    the judgment debtor, but it was acknowledged that he had an " equity "
    therein, and after several transfers the property was deeded to him and
    on the next day deeded to his paramour, one of the defendants, for $100
    and other valuable considerations, the declarations evidencing his inten-
    tions as hereinbefore mentioned, although made a year prior to the

execution of the last deed, are so connected with the transfer as to be relevant on the question of fraud in such transfer.

Great disparity between the actual value of property and the recited consideration in a deed on the sale thereof, coupled with the continued occupancy undisturbed by the several intermediate grantees, tends to substantiate a charge that the transaction was fraudulent.

The failure of defendants to testify in a suit to set aside a fraudulent conveyance permits the court to draw from the evidence already given the inference most favorable to the plaintiff.

It is a reasonable inference from the evidence that the grantor intended by the conveyance to his paramour to hinder, delay and defraud his creditors, and that the failure of the defendants to offer any evidence renders this inference irresistible.

APPEAL by the defendants, Virginius J. Mayo and another, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 30th day of January, 1920, on the decision of the court after a trial at the Kings Special Term.

The action is brought by the plaintiff, a judgment creditor, to set aside a conveyance of real property made by defendant Mayo, as grantor, to defendant Lois Dudley Waterbury, as grantee, on the ground that the same was made with intent to hinder, delay and defraud the creditors of defendant Mayo.

*Meier Steinbrink* [*Frank E. Johnson, Jr.,* and *J. Sidney Bernstein* with him on the brief], for the appellants.

*Edmund L. Mooney* [*Ralph Gillette* and *Charles P. Carney* with him on the brief], for the respondent.

BLACKMAR, J.:

The question presented by this appeal is whether the finding of fact that the conveyance was made with intent to hinder, delay and defraud creditors is supported by evidence that is competent against the grantee. There is evidence, competent against the grantor, which amply sustains the finding of fraud. But that is not sufficient; for such finding must be sustained by evidence that is competent also against the grantee. The plaintiff introduced in evidence a record of testimony given by the grantor, Mayo, upon the trial of the action that resulted in the judgment which is the foundation of the present action. This evidence, competent

as against the grantor, Mayo, is hearsay as against the grantee, Waterbury. (*Lent* v. *Shear*, 160 N. Y. 462.) I shall, therefore, proceed with the examination of the case as though such evidence had not been introduced. It is peculiar that in actions of this kind declarations of the grantor are admissible in evidence for the purely technical reason that they are admissions of a party to the action; but when passing upon the crucial question of fraud this evidence may not be considered, for a finding of fraud affects the title of the grantee, and the evidence which induces such finding must be competent also against him.

The plaintiff and defendant Mayo were united in a ceremonial marriage in the year 1904. They lived together as man and wife in New Haven, Conn., until 1915. The plaintiff then, discovering that Mayo had another wife living when he married her and that he had, therefore, inducted her into the position of mistress and not of wife, brought an action against him for the wrong so done her. That action resulted in a verdict for $100,000, on which judgment was duly entered, to aid in the satisfaction of which this action is brought. Soon after the institution of the action referred to, the plaintiff went to New Haven, where Mayo resided, to secure from him certain personal property which belonged to her and which he refused to return. So persistent was his refusal that she was compelled to bring a suit in replevin to secure the property. When there she saw and had an interview with him. He was strongly incensed against her for bringing the action, and said to her: " Oh, you expect to get something out of me in this action that you have brought against me, but I want to tell you right now that I have — I will fix everything so that you will never get one cent, and I have the screws down good and tight." This statement made by Mayo was not hearsay. It was not a narration of a past event. It was an exhibition of his mental attitude towards the plaintiff and of his intention then to prevent her from realizing anything upon any judgment that she might recover in the pending action. Its value as evidence depends upon its spontaneity. The words were the result of his anger and resentment against the plaintiff, which induced him to disclose his mind, and through those words

we can see clearly the operation of his mind and what his intent was with reference to avoiding the payment of any judgment. This is evidence competent not only against him but against his grantee. The words open the window of his mind and disclose his intent.

I conclude that the evidence was competent against the grantee; its relevancy to the transaction is another matter. The words were spoken in December,. 1915. The fraudulent conveyance was made in December, 1916, a year thereafter. If the words had been contemporaneous with the transaction itself, there would be little doubt of their relevancy to the transaction as evidence of intent. But the relevancy of evidence does not depend entirely upon its relation to the transaction in point of time. If the situation of the parties was such as to create the presumption or permit the inference that the same mental attitude on the part of defendant Mayo towards the plaintiff which existed in December, 1915, continued to December, 1916, then evidence of his intention a year previously is relevant, and the lapse of time affects its weight only, and not admissibility. It appears that defendant Mayo and defendant Waterbury were living together as paramours on the premises conveyed by the fraudulent deed, from at least the year 1913 to the date of the trial of this action. The legal title during most of that time was not in defendant Mayo, but was at one time, during defendants' occupancy, in a lawyer named Shelp, and counsel for defendants admitted upon the trial of the action that at that time defendant Mayo had an " equity " in the property. Shelp transferred it to Carpenter, an employee of the corporation with which Mayo was connected, and Carpenter, by a deed dated the 23d of October, 1916, which recited a consideration of one dollar and other valuable considerations, conveyed the property to Mayo. Thereafter Mayo, by a deed dated December 12, 1916, and which recited.a consideration of one hundred dollars and other valuable considerations, conveyed the premises to his paramour, Waterbury. That deed was recorded on December 14, 1916, one day after the deed to Mayo was recorded. It thus appears that at the time of the threats made by Mayo, in December, 1915, he was occupying

and had an equitable interest in the premises that were the subject of the alleged fraudulent grant. In view of this fact, declarations evidencing his intent in 1915 to defeat the judgment that might be recovered in the action, are so connected with the transfer of the property in 1916 as to be relevant to the question of fraud in such transfer.

The conveyance which has been adjudged fraudulent recites a consideration of $100 and other valuable considerations. It cannot, therefore, be considered a voluntary conveyance so that the doctrine of *Kerker* v. *Levy* (206 N. Y. 109) and *Ga Nun* v. *Palmer* (216 id. 603) may be applied. But the disparity between the consideration recited and the value of the property, which was stipulated at $12,500, is so great as, under the circumstances, to be relevant to the issue of fraud. (*Ten Eyck* v. *Witbeck*, 135 N. Y. 40.) Defendants Mayo and Waterbury were, according to the testimony of the witness Ferry, living together in the premises in question under the name of Dudley, in the apparent relation of man and wife, for six or seven years immediately prior to the date of the trial. This occupancy continued undisturbed by the deed from Carpenter to Mayo or the deed from Mayo to Waterbury. The illicit relations between the parties were so close and so long continued that a transaction between them should be scrutinized as carefully at least as a transaction between husband and wife. Continued occupancy of premises by a grantor after the conveyance is a badge of fraud because it is a practical reservation to himself of a benefit. On the 20th of June, 1917, when defendant Mayo was under arrest in civil process and required to give bail in the sum of $5,000, he and defendant Waterbury went to the office of an indemnity company and defendant Waterbury there lodged with the indemnity company a deed of this property to secure it for going upon the bail bond. That deed was not recorded and was subsequently returned to the attorney for defendant Mayo.

Not only did the defendants rest without producing evidence, but an attempt to examine them before trial, made by the plaintiff, was apparently foiled. This failure on the part of either defendant to testify permitted the court to draw from the evidence already given the inference most

favorable to the plaintiff. "All evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted." (*Kirby* v. *Tallmadge*, 160 U. S. 383, quoted from Lord MANSFIELD in *Blatch* v. *Archer*, Cowp. 63, 65.) The evidence may be summarized as follows: Defendant Mayo was a resident of New Haven, Conn., although he had a business interest in the city of New York. It is in evidence by the plaintiff, uncontradicted, that he was in 1915 a man of wealth, with a large income. He and defendant Waterbury were at that time living as man and wife, under the assumed name of Dudley, in the premises subsequently conveyed to her. While this was the condition he made to the plaintiff threats which evidenced his intent to defeat the collection of any judgment that she might obtain. At that time the property, although standing in the name of another, was practically his own, and immediately upon being clothed with the legal title he conveyed it to his paramour by a deed which recited a consideration of $100 and other valuable considerations only, and the property was used as security for bail required of defendant by an order of arrest in the civil action in which the plaintiff recovered her judgment. It is a reasonable inference from all this evidence that Mayo intended by that conveyance to hinder, delay and defraud the plaintiff, a judgment creditor, and the failure of the defendants to offer any evidence rendered this inference irresistible.

I, therefore, reach the conclusion that the finding of the trial court that the conveyance was made to hinder, delay and defraud creditors is sustained by the evidence.

The judgment should be affirmed, with costs.

MILLS, RICH and JAYCOX, JJ., concur; JENKS, P. J., not voting.

Interlocutory judgment affirmed, with costs.