(140 App. Div. 428.)

KERKER v. LEVY et al.

(Supreme Court, Appellate Division, First Department. November 4, 1910.)

1. FRAUDULENT CONVEYANCES (§ 170*)—INTENT OF GRANTOR IMPUTED TO GRANTEE—CONSIDERATION.

In a suit to set aside a fraudulent conveyance made by a prospective husband to his prospective wife on her promise of marriage, the intent of the husband to defraud creditors could not be imputed to the wife, though she paid no money or property in consideration for the conveyance.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. § 521; Dec. Dig. § 170.*]

2. FRAUDULENT CONVEYANCES (§ 271*)—FRAUD MUST BE PROVED.

In a suit to set aside a fraudulent conveyance, fraud must be proved.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 796–798; Dec. Dig. § 271.*]

3. FRAUDULENT CONVEYANCES (§ 310*)—FINDING AS TO CONSIDERATION—MARRIAGE—VALUE.

In a suit to set aside a fraudulent conveyance made by a prospective husband to his prospective wife on her promise of marriage, the court's finding that she gave no money or property as a consideration does not amount to a finding that no valuable consideration was given for the transfer.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 959–961; Dec. Dig. § 310.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. FRAUDULENT CONVEYANCES (§ 301*)—INTENT OF GRANTEE—EVIDENCE:

While fraud may be inferred from slight circumstances, it cannot be left wholly to conjecture; so, in a suit to set aside a fraudulent conveyance made by a prospective husband to his prospective wife on her promise of marriage, fraud could not be imputed to her, in the absence of any evidence that she knew of her grantor's fraudulent intent, or that he had any creditors.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 904–907; Dec. Dig. § 301.*]

Appeal from Trial Term, New York County.

Suit by A. Lawrence Kerker against Charles S. Levy and another. Judgment for plaintiff, and defendants appeal. Reversed, and new trial ordered.

See, also, 123 N. Y. Supp. 1124.

Argued before INGRAHAM, P. J., and LAUGHLIN, MILLER, McLAUGHLIN, and DOWLING, JJ.

Edward W. Hatch, for appellants.

Edward W. S. Johnston, for respondent.

MILLER, J.    This is a judgment creditor's action to set aside as fraudulent and void certain transfers, made by the defendant Charles S. Levy to the defendant Bertha Levy on the 12th of June, 1908, 11 days before their marriage.   The plaintiff's judgment was docketed July 7, 1908, and was for a deficiency arising on a mortgage foreclosure sale on the 17th of June, 1908, held pursuant to an interlocutory decree of foreclosure and sale, entered on the 22d of May, 1908, in an action begun January 14, 1908.   Said mortgage was given December 15, 1904, to secure the said Charles S. Levy's bond for $28,500, a part of the purchase price of $38,500 of the mortgaged premises, which were on said 15th day of December, 1904, conveyed by the plaintiff to the said defendant's dummy, resold by him for $45,000, and on the same day reconveyed subject to said mortgage.

The only evidence as to the value of the premises at the time of the foreclosure sale, aside from testimony of a witness called by the plaintiff to the effect that there was then no market for the property, was the testimony of two concededly qualified witnesses, called by the defendants, to the effect that the property was then worth $47,500. As found by the trial court, at the time of the alleged fraudulent transfers, said defendant was indebted for personal loans in the sum of $200 or $300, and was also liable on a bond to one Westervelt for $13,000, which was also given to secure the payment of a part of the purchase price of certain real property and was secured by a mortgage thereon, to foreclose which an action was begun on the 25th day of April, 1908, resulting in a deficiency judgment, entered on the 15th day of September, 1908, for $11,157.14.   On the 12th day of June, 1908, the said defendant also transferred to his mother a one-half interest in a retail clothing business, which interest, the court found, was then worth about $4,000.   The court found that the said defendant did not receive from his mother any money or property of any kind at the time of said transfer, and that, after the making of said

transfers to his mother and to the defendant Bertha Levy, he did not have left any property, except a few hundred dollars in cash. There is no finding that the alleged fraudulent transfers were voluntary; but there are findings to the effect that the defendant Charles S. Levy did not, at the time of making such transfers, receive from the defendant Bertha Levy any money or property of any kind; that the defendant Bertha Levy knew that the defendant Charles Levy had theretofore transferred to his mother his interest in said retail clothing business; that the transfers to her were of all the property, real and personal, other than a few hundred dollars in cash, that the defendant Charles. Levy had; that they were made by the defendant Charles S. Levy with the intention to hinder, delay, and defraud his creditors, and were accepted by the defendant Bertha Levy with like intent; and that she is chargeable with the fraudulent intent of her transferee. There is no evidence to show, and no finding to the effect, that the defendant Bertha Levy knew of the existence of the plaintiff's or of the Westervelt mortgages, or that the defendant Charles S. Levy owed any debts, at the time of the transfers to her.

The judgment is challenged by the appellant Bertha Levy on the ground that there is no evidence to support the finding of fraudulent intent on her part. While the defendant Charles S. Levy may well have believed that the mortgaged premises were ample security for his bond (by reason of his conveyance they undoubtedly became primarily chargeable with the payment of the mortgage debt), we think there is sufficient evidence in the record at least to present a fair question of fact respecting his fraudulent intent. However, there is no evidence in the record to sustain the finding of fraudulent intent on the part of Bertha Levy, and she cannot be charged with the fraudulent intent of Charles simply because she took a transfer of all his property, except for a few hundred dollars in cash, without parting with "any money or property" at the time.

It is unnecessary to cite authority upon the proposition that fraud must be proved, and that fraudulent intent on the part of a grantee is not established by proving such intent on the part of the grantor. No doubt Bertha Levy would have been chargeable with her grantor's fraudulent intent, if the transfers to her had been purely voluntary; but a finding that she parted with no money or property does not amount to a finding that there was not a valuable consideration for the transfers. Of course, as the respondent asserts, persons are presumed to intend the natural consequences of their acts, and it is that presumption which justifies a finding of fraudulent intent on the part of Charles S. Levy. But the defendant Bertha Levy cannot be charged with knowledge that the effect of the transfers to her was to hinder, delay, and defraud creditors of whom she was ignorant. There can be no presumption that a man has creditors. She might naturally have supposed that there were creditors of the partnership, engaged in the retail clothing business. But there is no claim of an intention to hinder, delay, or defraud such creditors, and the trial court found that the assets of that business were worth several thousand dollars more than its liabilities. This judgment can be supported only on

the theory that there was an intention to hinder, delay, and defraud the plaintiff; and there is no evidence to show, and no finding, that she had any knowledge of the pendency of the foreclosure action, or even of the existence of the plaintiff's bond and mortgage.

The defendants·testified that on October 21, 1907, they became engaged to be married to each other, and that to induce the· defendant Bertha Levy to marry him, and in consideration of her promise to do so, the defendant Charles S. Levy promised to transfer to her all his property; that the marriage was first set for March 23, 1908; that it was postponed, because Charles had not kept his promise to make such transfer; that Bertha refused to marry him unless he did; that finally the marriage was set for June 23d, and, upon Bertha's insistence that the transfers must be made before the marriage took place, Charles finally consented to, and did, make them on the 12th day of June.

No doubt, the oral agreement, made on the 21st of October, to transfer the property, was void under the statute of frauds; but we have to do with an executed, not an executory, contract. Assuming that the defendants told the truth, it is impossible to distinguish this case from De Hierapolis v. Reilly, 44 App. Div. 22, 60 N. Y. Supp. 417, affirmed 168 N. Y. 585, 60 N. E. 1110, except that, in that case, the transferee had not, as here, performed her part of the agreement in reliance upon the transfer. The transfer in that case was of a specified fund; but the transferror had no other means to satisfy liabilities which he had incurred prior to the transfer.

We do not say that the court was bound to believe the defendants' testimony, though it is to be noted that, if such testimony be rejected, there is no evidence in the record bearing on the subject of the consideration for the transfers. It is unnecessary to decide whether, upon this record, the trial court would have been justified in finding that the transfers were made without any consideration, because there is no such finding. If they were in fact made without consideration, with the actual intent on the part of Charles S. Levy to hinder, delay, and defraud creditors, or, though made for a valuable consideration— i. e., in consideration of the defendant Bertha Levy's promise to marry Charles, actually performed by her—but with an intent on her part to hinder, delay, and defraud the creditors· of Charles, they were doubtless fraudulent·and void as to the plaintiff. But, as we have seen, there is no finding that the transfers were voluntary, and no evidence to show actual fraudulent intent on her part, or notice of the fraudulent intent of her transferror.

We are mindful of the fact that it is difficult, and often impossible, to establish fraud by direct evidence, and that the courts carefully scrutinize transactions between parties sustaining the relations existing between. the defendants in this case. But though fraud may be inferred from the surrounding circumstances, and even from slight circumstances, it cannot be left wholly to·conjecture and surmise. We do not wish to be understood as holding that a transfer of all his prop-.erty by a prospective husband to his·prospective wife in consideration .of her promise.to marry him might not be adjudged fraudulent, upon ;proof that the. transferee knew that her transferror had creditors who,

by the transfer, would be deprived of means to satisfy their claims. Suffice it to say that we now have no such case before us.

Judgment should be reversed, and a new trial ordered, with costs to abide the final result. All concur.