### THE PORTCHESTER.

## JOHN W. SULLIVAN CO. v. MUTUAL TRUST CO. OF WESTCHESTER COUNTY.

### No. 182.

Circuit Court of Appeals, Second Circuit.
March 7, 1932.

Alexander, Ash & Jones, of New York City (Edward Ash and Lawson R. Jones, both of New York City, of counsel), for appellant.

Paul C. Matthews, of New York City (Archibald F. McGrath, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This libel was filed on May 17, 1930, claiming a maritime lien under the Act of June 5, 1920 (46 USCA § 971), for labor and materials supplied to the vessel in an aggregate amount of some $2,200, of which $1,680 still remained unpaid. Only $530 of such balance was for work performed within one year prior to the date of suit; the remaining $1,150 was for repairs rendered earlier. Accordingly, under the doctrine of Nolte v. Hudson Navigation Co., 297 F. 758 (C. C. A. 2), the libelant's lien was limited to $530 and interest, and as to the $1,150 for earlier work was held to be barred by laches by reason of section 83 of the N. Y. Lien Law (Consol. Laws N. Y. c. 33). It is urged that the doctrine of the Nolte Case should be deemed inapplicable because payments on account of libelant's services were made within a few months of the date of suit. But the language of section 83 is that "the lien shall cease" at the expiration of twelve months after the debt was contracted; the statute grants no extension of the lien because of the debtor's recognition of the debt by partial payments.

The defense of laches was not raised by the owner of the vessel, who defaulted, but by an intervener, the Mutual Trust Company of Westchester County, which claimed to be a prior lienor under a mortgage of the Portchester recorded in the United States Customs House on February 27, 1925. The appellant contends that the mortgagee is in no position to raise the equitable defense of laches on the part of libelant. Originally the mortgage secured an advance of $10,000 evidenced by eight notes of $750 and four of $1,000 maturing at intervals of three months. Up to May, 1927, $5,625 had been repaid by the mortgagor, leaving a balance of $4,375 of the original indebtedness. An additional advance was then made by the mortgagee, although the mortgage said nothing about further advances, again bringing the debt up to $10,000. This in turn was reduced by monthly payments until March, 1928, when a further advance once more made the debt $10,000. Altogether the total advances amounted to $17,625 and the total payments to $12,625, leaving a balance of $5,000 unpaid at the date of the libelant's suit. On each of the occasions when a new advance was made, the mortgagor executed a new note for $10,000, and the mortgagee surrendered the outstanding prior notes. On May 7, 1930, a new note was given for the $5,000 balance. The new notes had additional indorsers. No new agreement in writing was signed, and no entry was made upon the record of the mortgage, but it was orally agreed between the mortgagor and mortgagee that the original mortgage should continue as security for the indebtedness evidenced by the new notes. As between mortgagor and mortgagee it is conceded that the oral

580

agreement was sufficient to keep alive the lien of the mortgage, but not, the appellant contends, as against a third person. By February, 1929, the mortgagee had received repayment of $10,125; hence the original mortgage debt was extinguished, according to appellant's argument. In reply, the mortgagee argues that payments made by the mortgagor after May, 1927, ought to be applied against the mortgagee's later advances, with the result that the $4,375 balance of the original advance remains still unpaid and still secured by the lien of the mortgage.

Brinckerhoff v. Lansing, 4 Johns. Ch. (N. Y.) 65, 8 Am. Dec. 538, is authority for the proposition that the mortgage stands as security for the additional advances. But, even if the additional advances should be held to be not secured, it would seem that the subsequent payments should be applied to the unsecured portions of the debt, thus leaving the original advance still unpaid to the extent of $4,375. In Field v. Holland, 6 Cranch, 8, 28, 3 L. Ed. 136, Justice Marshall said that "it cannot be inequitable to extinguish first those debts for which the security is most precarious." This principle has been often applied. Schuelenburg & Boeckler v. Martin, 2 F. 747 (C. C. Kan.); In re Craig Lumber Co., 269 F. 755 (C. C. A. 9); Bacon v. Dollar S. S. Lines, 290 F. 964 (D. C. E. D. N. Y.); In re American Paper Co., 255 F. 121 (D. C. N. J.); Delaware Dredging Co. v. Tucker Stevedoring Co., 25 F.(2d) 44 (C. C. A. 3). Either view would defeat the appellant.

Moreover, aside from all other considerations, we think that, since the mortgage is valid as against the owner, the mortgagee is entitled to raise the defense of libelant's laches. It would seem strange to say that the owner-mortgagor could raise this defense but that the mortgagee could not, although his claim to the vessel or its proceeds is superior to that of the owner. We hold that he may. See Gray v. Hopkins-Carter Hardware Co., 32 F.(2d) 876, 879 (C. C. A. 5); The Rupert City, 213 F. 263, 266 (D. C. W. D. Wash.).

The remarkable contention that a mortgagee may lose his lien by failing promptly to foreclose upon the maturity of the mortgage debt was rejected, and rightly, in The Seguranca (D. C.) 70 F. 258, 261. We see no basis for charging the mortgagee with laches, and, adhering to Nolte v. Hudson Navigation Co. (C. C. A.) 297 F. 758, we affirm the decree.